**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LORENZO DI NATALE as ADMINISTRATOR of the ESTATE OF MARY MASSINO, Plaintiff,** | **CIVIL ACTION** |
| **v.** | **NO. 26-3216** |
| **ABINGTON TOWNSHIP and CHRISTOPHER PLATZ in his individual and official capacities, Defendants.** | |

**MEMORANDUM OPINION**

Abington Township's vacant property ordinance requires owners of vacant commercial properties to register those buildings and permit the Township to inspect them. The Estate of Mary Massino ("the Estate"), through its administrator Lorenzo Di Natale, complied with the first part of that law, registering five of its vacant properties. But it, acting through Di Natale, repeatedly denied the Township permission to conduct a warrantless inspection of the properties. The Township—through its fire marshal, Christopher Platz—then applied for and obtained administrative search warrants. In doing so, the Estate claims that Platz and the Township violated its constitutional rights by procuring the warrants without probable cause, through deception, and for retaliatory reasons. It now brings this action pursuant to 42 U.S.C. § 1983 for violations of its rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.[1] U.S. Const. amends. I, IV, XIV. Platz and the Township move to dismiss the

[1] Although the body of the Amended Complaint asserts violations of Article I, Section 8 of the Pennsylvania Constitution, none of the five counts in the pleading are predicated on the Pennsylvania Constitution.

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed R. Civ. P. 12(b)(6). For the reasons set forth below, their motion will be granted in part and denied in part.

## I. FACTS

The well-pleaded allegations in the Amended Complaint are taken as true at this stage. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Moreover, where, as here, a plaintiff attaches exhibits to the complaint, those documents are "appropriate to consider on a motion to dismiss" and "control" to the extent they "contradict [the] allegations." *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 111-12 (3d Cir. 2018) (citing *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)). Given the allegations informed by Plaintiff's attachments to its Amended Complaint the facts are as follows.

### A. The Vacant Property Ordinance (Ordinance 2097)

Abington Township promulgated Ordinance 2097 to address public concerns associated with vacant commercial properties. The law requires owners of non-residential buildings vacant for more than forty-five days to file a registration statement with the Township's Code Enforcement Department. Twp. of Abington, Pa., Ordinance 2097, § 126-4(A). It clarifies that "[i]n no instance shall the registration of a vacant building be construed to exonerate the owner . . . from responsibility for compliance with any other building code or housing code requirement." *Id.* § 126-4(A)(2). And it goes on to provide that "[a]t the time of registration, the Township will conduct an inspection of the premises, and advise the owner of any conditions that violate the Township property maintenance or similar codes, and shall advise the owner of the actions necessary to abate such violation or violations." *Id.* § 126-4(E). Although the Ordinance does not assign primary enforcement authority to any particular entity, the Amended Complaint alleges that enforcement was a joint responsibility of the Township's Code Enforcement Department, Vacant Property Review Board ("the Board"), and fire marshal.

### B. The Estate Refuses Interior Inspections

In March 2025, after the Estate received Ordinance 2097 registration requests for five properties located in the Township, the Estate filed the registration statements. A few months later, when Platz contacted Di Natale to schedule the initial inspections, Di Natale responded that the properties were up to date on taxes and utilities, had a working alarm system, complied with all building codes, and were not blighted. Citing the Ordinance, Platz explained that the inspections enabled the Township to determine for itself whether the properties complied with applicable building codes. Nevertheless, Di Natale contacted the Chairman of the Board, Yoni Hirt, to accuse Platz of conducting a "pretextual investigation."

Platz did not seek interior access again until nearly a year later. Di Natale again refused him entry and reaffirmed his accusation of an "agenda based/pretextual" investigation. With the approval of the Township's Solicitors Office, Platz then obtained administrative search warrants from a magistrate for the five registered properties. In the warrant application, Platz attested that Di Natale had "delayed and refused access to enter the propert[ies] on numerous occasions, even though [Ordinance 2097] states that upon registration an inspection is to be conducted." He continued that he had "been met with resistance through the date of this filing." When the Estate hired an attorney to contest the warrants, Platz withdrew them.

Two weeks later, however, he issued forty-eight notices of violations against six Estate properties. All noted infractions concerned violations visible from the properties' exteriors, ranging from overgrown weeds to exposed wiring to deterioration of windows, walls, doors, and roofs. Platz sent the notices to Di Natale and explained that the properties' external conditions created "significant concerns" about their interior. Accordingly, he reiterated the need to conduct an inspection, and he warned that he would obtain new warrants if again refused access. Di Natale worked diligently to address the violations and kept Platz apprised of his efforts. Platz

made sure to clarify that those efforts did not excuse the inspection requirement, and he set a deadline to permit access. The day before the deadline, Di Natale relayed that the Estate still refused to consent to inspections.

As he had advised, Platz again applied for administrative search warrants, this time adding one more unregistered property owned by the Estate. He cited the Estate's failure to comply with Ordinance 2097's inspection requirement as well as the exterior building code violations he had discovered at each property. Di Natale immediately filed an emergency petition requesting a "stay" of the warrants. In the interim, at a hearing before the issuing magistrate judge, the parties agreed that Platz would withdraw the warrants so long as the Estate provided requested documentation and demonstrated compliance with the outstanding violations. Subsequently, the parties jointly assessed the outside of all the properties at issue, and Platz confirmed compliance. Platz then withdrew the warrants.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those

facts state a "plausible claim for relief." *Id.* at 210-11. "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. DISCUSSION

42 U.S.C. § 1983, the statute upon which the Estate's claims are premised, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Section 1983 although a "federal cause of action[,]" *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 177 (2023), "'is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred.'" *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (brackets omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). Here, the Estate asserts that the Township as well as Platz in his personal and official capacities in efforts to enforce Ordinance 2097 violated its First, Fourth, and Fourteenth Amendment rights.

### A. Claims Against Platz in His Individual Capacity

#### *i. Qualified Immunity*

Platz asserts that he is entitled to qualified immunity and is therefore shielded from civil liability in his personal capacity. *See Lane v. Franks*, 573 U.S. 228, 243 (2014) (explaining that where qualified immunity applies, "courts may not award damages against a government official in his personal capacity"). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "An official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless he (1) violated a constitutional right that (2) was clearly established when he acted." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025) (citing *George v. Rehiel*, 738 F.3d 562, 571-72 (3d Cir. 2013)). It is Platz's burden to plead and prove entitlement to qualified immunity. *See id.* at 86 ("[T]he 'burden of pleading a qualified immunity defense,' like any other affirmative defense, 'rests with the defendant.'" (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 300 (3d Cir. 2006))); *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant]." (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982))).

a. Constitutional Violations

At the motion to dismiss stage, the first prong of the qualified immunity analysis simply asks whether the plaintiff plausibly alleges a constitutional violation. *See Stringer*, 141 F.4th at 85 ("[T]he first prong of the qualified immunity analysis . . . overlaps with a district court's inquiry under Rules 8(a) and 12(b)(6)."). Plaintiff's Amended Complaint contains five counts. Four are against only Platz in his individual capacity. The first alleges a violation of the Fourth Amendment—specifically, "Judicial Deception / Retaliation." The second is for "Retaliation for Excercise [sic] of First Amendment rights." The third is for "unlawful use of civil proceedings," and the fourth is for "abuse of process."[2]

*1. Malicious Use of Civil Process*

Plaintiff's claim for "unlawful use of civil proceedings," also referred to as a malicious use of civil process, alleges that Platz obtained administrative search warrants "as retaliation for

[2] The final count is a Section 1983 *Monell* claim for "Fourt [sic] Amendment retaliation and judicial deception" against Abington Township, although it also includes, despite them not being listed in the caption of the Amended Complaint, the "Abington Township Solicitor."

refusing a demand for an interior inspection of properties, while knowing the charges were baseless and lacked probable cause." It also alleges that, in the second set of warrant applications, Platz knowingly made materially false statements and omissions concerning the properties' conditions.

A Section 1983 claim for malicious use of process is the civil analog of a claim for malicious prosecution. *See McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir. 1992). Like malicious prosecution, the wrong at the heart of the claim is the "abuse of the judicial process by government agents." *Gallo v. City of Phila.*, 161 F.3d 217, 225 (3d Cir. 1998). "A claim of malicious use of process may state a Section 1983 claim if it includes the elements of that common law tort as it has developed." *McArdle*, 961 F.2d at 1088. Accordingly, a plaintiff must allege that: (1) the defendant actively initiated a civil proceeding against him; (2) the defendant acted in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing adjudication of the claim in which the proceedings were based; and, (3) the proceedings terminated in the plaintiff's favor. *See id.* (citing 42 Pa. C.S.A. § 8351; Restatement (Second) of Torts § 674 (1976)). To succeed, a plaintiff must also allege a violation of an "explicit constitutional" right. *Gallo*, 161 F.3d at 221.[3] Here, while the Estate's Amended

[3] Both parties, relying on *McArdle,* operate under the misconception that alleging the common law elements of malicious use of process is sufficient to state a Section 1983 claim for the same. That was the rule when *McArdle* was decided, but the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994), changed the legal landscape. In *Albright*, a four-justice plurality held that "substantive due process, with its 'scarce and open-ended' 'guideposts,'" was an inappropriate constitutional hook for a Section 1983 malicious prosecution claim. *Albright*, 510 U.S. at 275 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). Rather, the plurality explained, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing'" a Section 1983 claim. *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Since *Albright*, the Third Circuit has required plaintiffs raising Section 1983 malicious prosecution claims to allege a "deprivation of liberty consistent with the concept of seizure." *Lozano v. New Jersey*, 9 F.4th 239, 247 (3d Cir. 2021); *see also, e.g.*, *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020); *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016); *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014); *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007); *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). The additional showing of a seizure ensures that officials are liable under Section 1983 only where their conduct has

Complaint does not articulate a clear theory of a constitutional violation, its allegations sound in the Fourth Amendment's guarantee against unreasonable searches and in the procedural component of the Fourteenth Amendment's Due Process Clause.[4] U.S. Const. amends. IV, XIV. Assuming either provision can ground a malicious use of process claim, the Amended Complaint fails to plausibly allege a constitutional violation.

As previously stated, the Estate alleges that Platz obtained administrative search warrants without probable cause and for the purpose of retaliating against him.[5] But in both instances, Platz withdrew the warrants after the Estate threatened or took legal action against their enforcement. There is no allegation that Platz ever set foot inside the Estate's properties. To the contrary, the Estate alleges that the "direct result" of Platz's conduct was that "an illegal search . . . was narrowly avoided." Because no "search" was actually conducted, the Estate fails to allege a Fourth Amendment violation. *See Carpenter v. United States*, 585 U.S. 296, 304 (2018) (explaining that a Fourth Amendment search occurs where there is "official intrusion" into a

---

violated "'an explicit textual source of constitutional protection against a particular sort of government behavior,'" which, in the malicious prosecution context, is the Fourth Amendment's protection against unreasonable seizure. *Gallo*, 161 F.3d at 222 (quoting *Albright*, 510 U.S. at 273); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (reasoning that the seizure requirement "is necessary to ensure that the [Section] 1983 plaintiff has suffered a harm of constitutional proportions"). "There is . . . no reason to assume that *Albright*'s changes to the [Section] 1983 landscape somehow do not also apply to . . . malicious use of process [Section] 1983 claims." *Hassoun v. Cimmino*, 126 F. Supp.2d 353, 363 n.12 (D.N.J. 2000); *see also McArdle*, 961 F.2d at 1088 (drawing on malicious prosecution precedents in recognizing and defining the contours of a malicious use of process claim). Accordingly, post-*Albright* malicious use of process claims must allege a violation of an explicit constitutional right.

[4] Procedural due process arguably a potential basis for the Estate's claim in light of Supreme Court dicta suggesting that the Due Process Clause could support a malicious prosecution claim. *See Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022) (observing that "[it] has been argued that the Due Process Clause could be an appropriate analytical home for a malicious prosecution claim under § 1983," but finding "no occasion to consider such an argument"); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (explaining that the Third Circuit's malicious prosecution precedents leave open the possibility "that a section 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause").

[5] The parties proceed under the assumption that administrative warrant applications qualify as "proceedings" for purposes of the constitutional tort and that the warrant applications—or at least the first set—lacked probable cause.

"constitutionally protected area" or a private sphere "that society is prepared to recognize as reasonable" (quotation marks and citation omitted)); *United States v. Karo*, 468 U.S. 705, 712 (1984) ("[W]e have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.").

The claim fares no better under the procedural component of the Due Process Clause. To allege a violation of procedural due process, the plaintiff must plead a deprivation of a protected liberty or property interest. *See Hernandez v. Gonzales*, 437 F.3d 341, 346 n.7 (3d Cir. 2006) ("Where no deprivation of a liberty or property interest has occurred, no violation of procedural due process has occurred."). The narrow avoidance of an administrative search fails to describe a "deprivation" in any sense of the word. *See Daniels v. Williams*, 474 U.S. 327, 328, 331 (1986) (conceptualizing a deprivation as a "loss of or injury to life, liberty, or property," and holding that it must result from an official's "deliberate" act). Because the Amended Complaint fails to plead a violation of an explicit constitutional right, and because there is nothing to suggest the Estate could plead a cognizable intrusion or a deprivation of a protected interest, the malicious use of process claim will be dismissed with prejudice. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (explaining that amendment is not permitted where doing so would be "futile," such as where no new facts could be added to state a plausible claim for relief).

*2. Abuse of Process*

The Estate's abuse of process claim is based on the same conduct as its malicious use of process claim—that is, it alleges that Platz "weaponized" the administrative search warrant process "as a tool of personal retribution" and obtained warrants "issued without probable cause" and based upon "falsehoods." "[A] section 1983 claim for malicious abuse of process lies where

'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)). "An abuse of process is by definition a denial of procedural due process." *Jennings*, 567 F.2d at 1220. Accordingly, Section 1983 claims for abuse of process require allegations of, among other things, a deprivation without due process. *Id.;* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). In *Jennings*, for example, the plaintiff alleged that prosecutors had used a criminal prosecution as a means of extorting him. *Jennings*, 567 F.2d at 1220. The court held that his alleged injuries—"the deprivation of liberty concomitant to arrest and to the pendency of a criminal process"—stated a due process "injury actionable under [S]ection 1983." *Id.* By contrast, as just explained, the Amended Complaint does not allege a cognizable deprivation of liberty or property. Therefore, the abuse of process claim will also be dismissed with prejudice. *See In re Burlington*, 114 F.3d at 1434.

*3. First Amendment Retaliation*

Platz next seeks dismissal of the claim against him for First Amendment retaliation. "Under the doctrine of retaliation, 'an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.'" *Miller v. Mitchell*, 598 F.3d 139, 148 n.9 (3d Cir. 2010) (quoting *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997)). "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (1998). "To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his

constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Thomas*, 463 F.3d at 296). Whether activity is protected is a question of law; the other two elements are questions of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

"'The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation.'" *George*, 738 F.3d at 585 (quoting *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 282 (3d Cir. 2004)). Here, the Estate maintains that it exercised its First Amendment rights on two occasions. First, in June 2025, when Di Natale on its behalf emailed the Board Chairman, Yoni Hirt, "in an effort to promote full transparency" regarding Platz. In that email, Di Natale described how Platz seemingly wished to conduct an off-cycle "fire inspection" yet had "refused to provide reasons to the owner for the immediate need to access and inspect the . . . Properties." Stating that the properties were free of violations, he expressed his belief that Platz was manufacturing "a pretextual investigation with the hope of finding violations in an attempt to cite the owner and pressure the owner to sell the building[s]." Undoubtedly, raising concerns to a governing body about a local official's potential misconduct constitutes protected First Amendment activity. *See Mirabella*, 853 F.3d at 647, 649 (holding that plaintiffs "engaged in constitutionally protected speech and petitioning" when they emailed a township board to "protest[]" its failure to protect public wetlands). Second, the Estate also engaged in protected conduct when, in March 2026, it filed a state court action challenging the first set of warrants. *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (*Conard I*) ("There is no doubt that Conard's initiation of [a civil rights] action was constitutionally protected conduct . . . .").[6]

[6] Platz's focus in his brief is on the Estate's allegation that it refused to consent to a warrantless search, arguing that

Platz makes no argument as to whether the retaliatory act was sufficient to deter a person of ordinary firmness—and therefore waives that issue. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument."). Instead, he proceeds directly to the question of whether the Amended Complaint plausibly alleges "a causal link between a plaintiff's constitutionally protected activity and the retaliatory act." *Mirabella*, 853 F.3d at 651. "A plaintiff sufficiently pleads [his] case with respect to causation if [he] pleads that [his] 'constitutionally protected conduct was a substantial or motivating factor' for the retaliatory conduct." *Conard I*, 902 F.3d at 184 (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)). Generally, causation is established through "'unusually suggestive' timing" or "a 'pattern of antagonism' in addition to the timing of events." *Id.* (quoting *Watson*, 834 F.3d at 422, 424).

Drawing on two nonbinding decisions, Platz contends that the Estate's retaliation claim has a timing problem that defeats a plausible inference of causation. In *Southerton v. Borough of Honesdale*, a chief of police maintained that the Borough had failed to properly compensate him since late 2013 in retaliation for filing a 2017 lawsuit. 2018 WL 1035774, at *4-5 (M.D. Pa. Feb. 23, 2018). The court dismissed his retaliation claim, explaining that "it is not possible to meet the retaliation standard when the adverse action precedes the protected activity." *Id.* (citing *Glanzman v. Metro Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004)). Similarly, in *Conard v.*

---

such refusal does not constitute protected First Amendment activity. In doing so, he does not address the Amended Complaint's other allegations regarding the email to Hirt or the state court action. Moreover, his reliance on *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002), is misplaced. That case involved wholly different circumstances and legal questions—specifically, whether a Jewish Orthodox practice of affixing "lechis" to utility poles was "expressive conduct" protected by the Free Speech Clause of the First Amendment. *Tenafly*, 309 F.3d at 158. That question arose only because the religious conduct, unlike Di Natale's written communications and legal filings, "d[id] not involve the use of words." *Id.*

*Pennsylvania State Police*, a state police officer claimed that negative references provided by a former supervisor were made to retaliate against her for filing a civil rights lawsuit. 2022 WL 58543, at *2 (3d Cir. Jan. 6, 2022) (per curiam) (*"Conard II"*). The court affirmed summary judgment for the supervisor because there was no evidence that the negative feedback came after the lawsuit. *Id.* at *3-5.

*Southerton* and *Conard II* stand for a straightforward proposition: to constitute a cause of retaliation, a plaintiff's First Amendment activity must, at a minimum, predate the alleged retaliatory conduct. Here, the Estate's allegations easily satisfy that condition. The Amended Complaint alleges that *after* Di Natale emailed Hirt, Platz obtained the first set of administrative search warrants in retaliation. Then, *after* initiating a lawsuit to stop those warrants from being executed, Platz retaliated again by issuing the notices of violations—including some against a sixth Estate property—and by obtaining a second set of warrants based on these violations. Unlike the conduct challenged in *Southerton* and *Conard II*, Platz's alleged retaliation followed the Estate's protected activities.

Platz, however, argues that causation is lacking because his "intent" to conduct an interior inspection of the properties existed before the alleged protected activity. Even so, a preexisting desire to obtain interior access to the properties is not the same as a preexisting decision to use retaliatory means to do so. Put differently, the Estate alleges that the "retaliatory action," *Mirabella*, 853 F.3d at 649, consisted of Platz securing administrative warrants and issuing notices of violations. Nothing in the Amended Complaint suggests that he decided to utilize those enforcement methods before the Estate's protected activity. Accordingly, the motion to dismiss shall not be granted on the Estate's First Amendment retaliation claim. *See Hedges*, 404 F.3d at 750 ("The defendant bears the burden of showing that no claim has been

presented.”).

### *4. Fourth Amendment Retaliation*

The Estate’s Section 1983 Fourth Amendment retaliation claim asserts that it was retaliated against because it refused to permit a warrantless, non-consensual administrative search of its properties. Such a claim survives this motion to dismiss only if the Amended Complaint adequately alleges: (1) constitutionally protected activity; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and, (3) a causal link. *See Eichenlaub*, 385 F.3d at 282.

Platz sees no daylight between the First Amendment and Fourth Amendment retaliation claims, suggesting that the Fourth Amendment claim should be dismissed solely because it is “duplicative” and “better analyzed as a claim under the First Amendment.” Certainly, the retaliation claims share a high degree of factual overlap and apply similar standards, but Platz provides no authority for the proposition that such a similarity, standing alone, means that one or the other should be dismissed. To the contrary, the Third Circuit has held that “official retaliation for the exercise of *any* constitutional right creates an actionable claim under Section 1983,” *Anderson*, 125 F.3d at 162 (emphasis in original), which implicitly recognizes that retaliation motivated by the contemporaneous exercise of separate constitutional rights can give rise to separate claims. Platz’s own citation—to a nonprecedential summary judgment decision—reinforces that conclusion. *See, e.g.*, *Taylor v. City of Phila.*, 2004 WL 1126015, at *11-13 (E.D. Pa. May 20, 2004) (analyzing First and Fourth Amendment retaliation claims separately, explaining that while the First Amendment claim was premised on the plaintiff’s statement to “get a warrant,” her Fourth Amendment claim was based on “her search warrant demand”). Platz’s only other argument is that the Fourth Amendment retaliation claim has the

same causation problem as the First Amendment claim. Dismissal on that ground is unwarranted for the reasons stated above.[7]

* * *

In sum, the Estate does not plausibly allege claims for malicious use of process and abuse of process. Therefore, under the first prong of the qualified immunity framework, Platz is entitled to qualified immunity on those claims. However, the Estate's claims for First and Fourth Amendment retaliation remain. Whether Platz is clothed with qualified immunity with respect to those claims depends on the second prong of the qualified immunity analysis, *i.e.*, whether alleged constitutional violations premised on First Amendment and Fourth Amendment retaliation were "clearly established" at the time of the violations. Platz maintains they were.

b. Clearly Established

"[T]he Supreme Court has repeatedly stressed the importance of resolving qualified immunity 'at the earliest possible stage in litigation.'" *Stringer*, 141 F.4th at 85 (quoting *Pearson*, 555 U.S. at 232). At the same time, however, the Third Circuit has "repeatedly recognized" that the second prong of a qualified immunity analysis "presents unique difficulties at the pleading stage." *Id.* (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002); *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996)). "That is because the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established, and defining the right with specificity is a fact-intensive inquiry that

[7] Platz argues that "[t]o the extent [the Estate] asserts a substantive claim under the Fourth Amendment," *i.e.*, a claim for an unreasonable search or seizure, that "such a claim is also without merit." The Estate does not address this argument at all in its brief. Accordingly, any contra-argument to this theory is waived, and any Fourth Amendment claim to the extent it is not for retaliation shall be dismissed with prejudice. *See Arcuri v. Cnty. of Montgomery*, 2021 WL 1811576, at *10 (E.D. Pa. May 6, 2021) (explaining that courts in this District "consider[] a plaintiff's failure to substantively address a defendant's arguments for dismissal as an abandonment of those claims, begetting dismissal of the claim").

must be undertaken in light of the specific context of the case." *Id.* at 85-86 (quotation marks and citations omitted). Thus, "it is often the case" that "the precise contours of the official's conduct and the context in which it occurred" are too uncertain "on the face of the complaint" to determine "whether a 'reasonable official would have understood' that what he did violated the asserted constitutional right." *Id.* at 86 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

Denial of the qualified immunity defense is warranted here due to Platz's failure to identify the rights at issue. It is his burden to show entitlement to qualified immunity, which entails making at least some effort to define the right at issue with the requisite degree of specificity. But instead, he sets forth a bulleted list of allegations and conclusorily asserts that no official would have known that "this course of conduct" violated clearly established rights. This vague gesturing does not define a constitutional right with any specificity, let alone the "high degree of specificity" demanded by the Supreme Court. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation marks and citation omitted). In that Platz has not specified with the requisite degree of particularity what constitutional right is at issue or stated why that right was clearly established, he has not shown that he is cloaked with qualified immunity.

### B. *Monell* Claim Against the Township[8]

The Estate raises just one claim against the Township, specifically for "Fourt [sic] Amendment retaliation and judicial deception." Under Section 1983, municipalities are liable only for their own constitutional torts, *i.e.*, acts "that are, properly speaking, acts of the

[8] The claims against Platz in his official capacity are "effectively[] identical" to the Section 1983 claims against the Township. *Hill*, 455 F.3d at 233 n.9; *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004) ("A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself."). Accordingly, the claims are addressed together.

municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-78 (1986). Generally, this limitation means that a plaintiff must allege that his constitutional injury was caused by a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (brackets omitted) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A "custom" is a practice that, "'[a]lthough not authorized by written law,'" is "'so permanent and well settled as to constitute . . . the force of law.'" *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

In its motion, the Township identifies several allegations pertaining to the existence of a policy or custom. It then conclusorily asserts, without citation to any authority, that the allegations are insufficient to identify a policy or custom. The Estate responds that it has sufficiently pled a policy or custom: specifically, that Platz's actions qualify as official policy because the Township delegated to Platz "final decision-making authority"—in fact, "absolute, unreviewable discretion"—to enforce Ordinance 2097, manage vacant registrations, issue notices of violations, and seek administrative warrants. The Estate thus invokes the line of cases holding that the actions of an official vested with "final, unreviewable discretion to make a decision or take action" can constitute a policy for purposes of *Monell* liability. *Kneipp*, 95 F.3d at 1213 (quotation marks and citation omitted); *see also Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020) ("A pertinent decision by an official with decision-making authority on the subject constitutes official policy.").[9] The Township does not respond to this final-policymaker theory

[9] "'[W]hether a particular official has final policymaking authority is a question of state law.'" *Jett v. Dallas Indep.*

in its reply. That choice, coupled with the complete absence of legal argument in the initial motion to dismiss, means the Township's effort to dismiss the Estate's *Monell* claim must fail. *See Hedges*, 404 F.3d at 750.

### C. Relief Sought

#### *i. Compensatory Damages*

The Amended Complaint seeks compensatory damages from both Platz and the Township in part for "pain, suffering, mental distress, anguish, [and] humiliation" allegedly suffered. As explained above, Di Natale brings this suit on behalf of the Estate, which, all parties agree, cannot by its very nature recover damages for pain or emotional harms. Accordingly, the damages request for pain, suffering, mental distress, anguish, and humiliation will be dismissed with prejudice.

#### *ii. Punitive Damages*

As for the Estate's request for punitives, it concedes that municipalities are not liable for punitive damages in Section 1983 suits. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Thus, any request for punitive damages against the Township will be dismissed with prejudice. Further, as set forth below, neither is the Estate entitled to punitive damages against Platz.

Punitive damages are available in Section 1983 suits where the defendant has acted with "reckless or callous disregard for the plaintiff's rights" or has intentionally violated federal law. *Smith v. Wade*, 461 U.S. 30, 51 (1983); *accord Keenan v. City of Phila.*, 983 F.2d 459, 469-70 (3d Cir. 1992). They are, however, "'a limited remedy, to be reserved for special

---

*Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion)).

circumstances.'" *Keenan*, 983 F.2d at 470 (quoting *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir. 1989)). The defendant's conduct must "'amount[] to something more than a bare violation justifying compensatory damages or injunctive relief.'" *Id.* (quoting *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978)).

In this case, the Estate maintains that Platz acted with reckless or callous indifference because he "knowingly engaged in judicial deception in obtaining administrative search warrants." The allegation is premised on the contention that, when applying for the second set of warrants, Platz deceived the issuing magistrate into believing that "stale" information accurately represented the contemporaneous conditions of the properties at issue. Specifically, the warrant applications included allegedly "outdated" pictures depicting the properties as "blighted and in disrepair." Moreover, the applications allegedly neglected to describe the Estate's efforts to bring the properties into compliance with the Township's property maintenance ordinances. The issuing magistrate, according to the Amended Complaint, was misled into thinking that building code violations existed at the properties as of the date of the warrant applications.

The allegations of judicial deception are undermined by Platz's actual warrant applications, which are attached to the Amended Complaint and are viewed in a light most favorable to Plaintiff. *See Vorchheimer*, 903 F.3d at 105, 111-12. Platz filed the second set of warrant applications seeking authorization to conduct inspections "for the purpose of determining compliance with applicable building, property maintenance, fire and life safety regulations, as well as to assess and document the safety of the structure(s) proactively for first responders." He attested that he had been consistently refused interior access to the properties, in violation of Ordinance 2097. Certainly, that representation was neither false nor misleading, and the Estate does not contend otherwise.

In addition to a violation of Ordinance 2097, Platz also grounded the applications in the multiple code violations discovered at each property. He expressly disclosed the date the violations had been uncovered and that "steps" had been taken "to remedy some of these issues." But he added that "compliance has not been achieved," and he indicated that the "nature of" the visible violations—particularly, the walls, roofs, and frames riddled with cracks and holes—engendered broader concerns about the properties' overall structural integrity. To allay those fears, and to uphold the Township's building ordinances, he needed to conduct a full interior inspection.

In short, the actual contents of the warrant applications undermine any claim of judicial deception. In fact, they support the inverse inference: that Platz conveyed to the issuing magistrate what was known to him at the time of the applications—*i.e.*, the Estate had failed to comply with Ordinance 2097 and a multitude of recent code violations relating to the properties' exteriors suggested violations discoverable only through an internal inspection. The Estate's allegations provide no basis to award punitive damages against Platz. Accordingly, his Motion will be granted on that issue.

***iii. Injunctive Relief Against the Township***

Federal courts have a "'continuing obligation'" to assure themselves of jurisdiction and, where necessary, to raise sua sponte issues with Article III standing. *Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 252 (3d Cir. 2017)). Here, the Estate requests that the Township be preliminarily and permanently enjoined from seeking warrants to conduct interior inspections pursuant to Ordinance 2097 "or other similar programs with less than traditional, individualized probable cause" or "based on retaliatory conduct." The Estate, however, lacks

Article III standing to pursue such relief.

"It is the [plaintiff's] burden, at the pleading stage, to establish standing." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011). To do so, the plaintiff must "'allege facts that affirmatively and plausibly suggest'" that it: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged action; and, (3) will likely be redressed by a favorable decision. *Schuchardt v. President of the U.S.*, 839 F.3d 336, 344 (3d Cir. 2016) (quoting *Finkelman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016)). Standing must be established "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Plaintiffs must demonstrate standing . . . for each form of relief that they seek (for example, injunctive relief and damages).").

Here, the Estate's entitlement to forward-looking relief depends on whether it alleges an "'imminent'" or "'certainly impending'" injury. *Reilly*, 664 F.3d at 42 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 158 (1990)); *see also Reading v. N. Hanover Twp.*, 124 F.4th 189, 196 (3d Cir. 2024) (explaining that "prospective relief to address future harm" requires alleging "that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))). That injury, in light of the Amended Complaint's allegations, could arguably arise from the Township applying for new administrative search warrants against the Estate's properties. The Amended Complaint, however, is devoid of any allegation plausibly suggesting that the Township has applied or soon intends to apply for new warrants. Instead, it merely describes the Township's conduct as capable of repetition, which, standing alone, fails to plausibly suggest that there is a "real and immediate threat" of an imminent future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Thus, the request to enjoin the Township from seeking new warrants—regardless of the

circumstances under which it does so—will be dismissed for lack of standing.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**